UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRYSTAL D. COLEMAN,

        Plaintiff,                     CIVIL ACTION NO. 16-cv-11039

        v.                               DISTRICT JUDGE SEAN F. COX

COMMISSIONER OF                MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Crystal D. Coleman seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to Social Security benefits for her physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 21) and Defendant's Motion for Summary Judgment (docket no. 25).  Plaintiff filed a Reply (docket no. 27) to Defendant's Motion.  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 5.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

### I.     RECOMMENDATION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment [21] be **DENIED** and Defendant's Motion for Summary Judgment [25] be **GRANTED**.

## II.     PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on May 1, 2013, alleging that she has been disabled since October 4, 2008, due to her physical and mental impairments.  (TR 17.)  The Social Security Administration denied Plaintiff's claims on September 16, 2013, and Plaintiff requested a *de novo* hearing.  (TR 17, 85, 114.)  On November 19, 2014, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Andrew G. Sloss.  (TR 33–50.)  In a January 12, 2015 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy.  (TR 27.)  The Appeals Council declined to review the ALJ's decision (TR 5), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.  (Docket nos. 21, 25.)  Plaintiff then responded to Defendant's Motion.  (Docket no. 27)

## III.     HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 21 at 3–11) and Defendant (docket no. 25 at 6-12) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony. The ALJ also discusses Plaintiff's medical record and hearing testimony throughout his decision. (TR 17-28.)  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record.  Therefore, the undersigned incorporates the factual recitations by reference.  Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2012; that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 4, 2008; and that Plaintiff suffered from the following severe impairments: degenerative disc disease, carpal tunnel syndrome, Hashimoto's disease (a thyroid disorder), and history of inguinal hernia surgery. (TR 19.) The ALJ also found that Plaintiff suffered from an adjustment disorder with mixed anxiety and depressed mood, and attention deficit hyperactivity disorder, but that these impairments were not severe. (TR 20.) Next, the ALJ found that Plaintiff's impairments, either individually or when combined, did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 21.) The ALJ then found that Plaintiff's allegations regarding the extent of her symptoms were not "entirely credible" and that Plaintiff had the following Residual Functional Capacity (RFC):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: she can frequently perform left foot tasks, and can occasionally climb ramps or stairs and balance. She is limited to frequent handling bilaterally; and must avoid concentrated exposure to vibration.

(TR 21.) Subsequently, in reliance on the Vocational Expert's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy, including marker, cashier, and copy machine operator. (TR 27.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from October 4, 2008, through the date of the decision. (TR 28.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)   Plaintiff was not presently engaged in substantial gainful employment; and

(2)   Plaintiff suffered from a severe impairment; and

(3)   the impairment met or was medically equal to a "listed impairment;" or

(4)   Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).

**C.    Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is

5

reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). The court can only "reverse the [ALJ's] decision and award benefits . . . if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176.

Plaintiff seeks remand under sentence four on the grounds that (1) the ALJ "formed an improper subjective symptom determination," which is essentially an attack on the ALJ's assessment of Plaintiff's credibility; and (2) "The ALJ's RFC analysis is not supported by substantial evidence." (Docket no. 21 at 12, 16.)

### 1. The ALJ's Credibility Assessment

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.[1] "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not)

---

[1] SSR 96-7p has been superseded by SSR 16-3p, effective March 28, 2016. *See* SSR 16-3p, 2016 WL 1119029, at *1; 2016 WL 1237954. Nevertheless, because the ALJ's decision in this matter was rendered prior to the effective date of SSR 16-3p, the ALJ was obligated to comply with SSR 96-7p. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations."); *see also Murphy v. Comm'r*, No. 1:15-cv-126, 2016 WL 2901746, at *8 n.6 (E.D. Tenn. May 18, 2016) (citations omitted) (concluding SSR 16-3p should not be retroactively applied).

credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p; *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors). Nevertheless, "[i]t is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Comm'r*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases).

Plaintiff testified and stated in her disability application paperwork that she was unable to work because of pain in her lower back and neck, extreme fatigue caused by her thyroid disorder, weakness in her hands following carpal tunnel surgery on both of her wrists, pain in her groin due to hernias and hernia surgeries, depression, anxiety, and ADHD. (TR 38, 40, 45; *see also* TR 180, 211.) The ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements

7

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (TR 22.)

Plaintiff asserts that the ALJ erred in assessing Plaintiff's credibility because the ALJ did not provide any "meaningful analysis." (Docket no. 21 at 13.) Plaintiff argues that the ALJ relied only on the discrepancies between Plaintiff's subjective complaints and the objective medical evidence, and did not properly analyze the factors. Plaintiff contends this is an especially egregious error in her case because her thyroid disease "results in symptoms that cannot be 'objectively verified' such as fatigue, pain to the joints and weakness." (Docket no. 21 at 14 (footnote omitted).) The undersigned disagrees with Plaintiff's characterization of the ALJ's credibility analysis.

First, as Plaintiff herself recognizes, the ALJ relied in part on the fact that Plaintiff worked part-time during the period of alleged disability. (TR 23 ("[D]espite the claimant's allegations, records reflect the claimant worked, but at less than substantial gainful activity levels in 2009, 2010, and 2013.").) Indeed, in September 2013, one of Plaintiff's doctors at the Hamilton Community Health Network specifically cleared her for work after Plaintiff had been experiencing flu-like symptoms due to her thyroid condition. (TR 24, 573.) And in 2014, Plaintiff worked at a storage facility, which the ALJ also notes in his decision. (TR 23, 552.) Plaintiff argues that her willingness and ability to work part-time do not necessarily establish that she has the ability to sustain full-time substantial gainful employment, which is true. (Docket no. 21 at 15.) Nevertheless, the fact that she has worked part-time does weigh against the credibility of her claims that she is totally unable to work due to her conditions.

Second, the ALJ discussed Plaintiff's treatment history at length. He noted that Plaintiff received only "conservative" treatment of her lumbar spine, although back pain is one of her

8

chief complaints. (TR 23.) He also noted that she received medication, physical therapy and injection therapy for her neck pain, and "is prescribed Synthroid but receives no other treatment" for her thyroid condition. (TR 23–24.) The ALJ specifically cites the fact that Plaintiff only takes over the counter pain medication. (TR 22.) Finally, he noted that, while she has had hernia surgery in the past, her "[p]ost-operative care was unremarkable," and that a 2014 CT scan showed no evidence of new hernia. (TR 24.)

Plaintiff's adult function report (TR 211–218) reveals that she lives with friends, is able to care for her cat, prepare meals daily in a "normal amount of time," and does some house work, including laundry and vacuuming. (TR 213.) She goes outside daily, is able to drive a car and go places alone, doesn't use a cane or other assistive walking device, and has no problems with personal care. (TR 212, 215, 217.) While the ALJ does not specifically discuss Plaintiff's activities of daily living, this factor would weigh against Plaintiff.

Moreover, the ALJ supported his finding that the severity of Plaintiff's subjective complaints was not supported by the objective medical evidence by explicitly discussing and citing to several examples of inconsistency between Plaintiff's complaints and the medical record. (*See, e.g.*, TR 22–23.)

In her Reply, Plaintiff argues that there is a "well-documented history of consistent chronic pain and objective evidence of impairments that could cause . . . chronic pain." (Docket no. 27 at 1.) However, the ALJ did not overlook Plaintiff's history of pain, and he explicitly discusses the MRI Plaintiff cites in support of her argument in her Reply. (TR 22, 278.) In the MRI, Dr. Noveloso finds that "[t]here is a mild concentric disc bulge causing effacement of the thecal sac," a "small left foraminal disc protrusion impinging the left L3 nerve root," and "associated mild spinal canal stenosis at this level." (TR 278.) While this supports Plaintiff's

9

claim that she has chronic pain, it does not show error on the part of the ALJ. The ALJ is required to weigh the evidence and he did so here. Plaintiff also takes issue with the ALJ's characterization of her treatment as conservative in her Reply. (Docket no. 27 at 2.) Plaintiff argues that she was "not deemed to be a surgical candidate," suggesting that the inoperability of her condition has forced her to be limited to conservative care. Plaintiff appears to be referring to the following note written by Dr. Vivekanand Palavali, M.D. in August 2011:

> [Plaintiff] comes for a follow up visit. The lumbar dynamic films do not show any subluxation. Her exam is unchanged. I do not recommend surgery. I told her to maintain a lower back home exercise program. I gave her a back care book and told her to follow the precautions and exercises mentioned in the book. If she still has lower back pain she can consider physical therapy. At this point I do not believe surgery is a good option.

(TR 272.) This note could be interpreted as finding that Plaintiff's condition is inoperable (although the undersigned notes a different doctor *did* recommend Plaintiff see a neurosurgeon and a rheumatologist but Plaintiff "declined" (TR 412)), however, it nevertheless reflects a conservative course of treatment. Indeed, Dr. Palavali did not even recommend physical therapy based on that particular exam. (TR 272.)

In sum, the ALJ properly cited to the evidence in the record that explains his reasons for finding Plaintiff's statements regarding the extent of her disability to be not entirely credible, in accordance with his duty to do so under SSR 96-7p. Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the court the weight that she gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and should not be disturbed. Plaintiff's Motion should be denied in this regard.

    *2.*    *The ALJ's Assessment of Plaintiff's RFC*

Plaintiff argues that the ALJ's assessment of her RFC is not supported by substantial evidence for a number of reasons. The undersigned will address each of the developed arguments, as the undersigned interprets them from Plaintiff's brief.

Plaintiff first seems to argue that the ALJ failed to sufficiently account for her back pain when he limited her to light work with occasional climbing of ramps or stairs and balance. Plaintiff does not state what additional limitations she requires or what components of light work she cannot perform due to her back pain. She instead argues that the ALJ improperly characterized her treatment history as conservative, when in fact, she has received "failed injection therapy, chiropractic therapy, and medication therapy." (Docket no. 21 at 16.) The undersigned addressed Plaintiff's arguments regarding the ALJ's characterization of her treatment history above, and will not repeat it here. It suffices to note that Plaintiff has not persuasively argued, or pointed to evidence in the record which shows that the ALJ's characterization of her treatment history for her back pain is not supported by substantial evidence. Indeed, the ALJ considered most, if not all, of the procedures Plaintiff discusses in her brief.

In particular, Plaintiff argues at length about the ALJ's "critique" of Plaintiff's decision not to accept Dr. Rama Rao's recommendation that Plaintiff try injection therapy for her back pain, and the ALJ's "critique" of Plaintiff's decision not to follow Dr. Kiet Doan's suggestion that she get an "exploration" for her groin pain. (Docket no. 21 at 17-18.) Plaintiff emphasizes that she received injection therapy "before and after Dr. Rao's suggestions" from Doctor Kavitha Reddy at the Great Lakes Spine Center (*id.* at 17), and that she simply wanted a second opinion from Dr. Christopher Ash regarding the groin exploration (*id.* at 18). She points that she did eventually get a groin exploration from Dr. Ash. (*Id.*) The problem with Plaintiff's argument is

11

that the ALJ *does* discuss Plaintiff's treatment with Dr. Reddy, including Dr. Reddy's recommendation that Plaintiff receive epidural injections, even if the ALJ did not specifically mention that Dr. Reddy gave Plaintiff an injection in October 2011.  He also generally mentions that Plaintiff has had "injections and physical therapy for her back," as well as for her neck.  (TR 22, 23.)

The ALJ also specifically discusses Plaintiff's treatment with Dr. Ash, noting that Plaintiff saw Dr. Ash in August 2011 and that Dr. Ash "performed exploratory surgery and nerve ligation."  (TR 24.)  The ALJ completes his discussion of Dr. Ash's treatment by noting that Plaintiff had no "evidence of hernia" in August 2014 despite her continued complaints of pain, and by stating that "[t]he residual functional capacity accommodates the claimant's hernia by limiting her to lifting 10 pounds frequently and 20 pounds occasionally."  (*Id.*)  The only evidence in the record suggesting Plaintiff does not have the ability to lift 20 pounds occasionally is Plaintiff's own testimony, which the ALJ did not find fully credible as discussed above, and the opinion of the state consultative examiner, Dr. Michael Geoghegan, D.O., to which the ALJ only assigned partial weight, noting that "[n]o other treating sources restrict the claimant's ability to lift to just 10 pounds."  (TR 24.)

Next, Plaintiff argues that the ALJ did not fully account for Plaintiff's "hand limitations."  (Docket no. 21 at 18.)  However, the ALJ discusses Plaintiff's history of carpal tunnel syndrome, noting that "[a]n EMG of the upper extremities in 2007 showed bilateral carpal tunnel syndrome, mild to moderate, no radiculopathy," but that Plaintiff proceeded with carpal tunnel surgeries in 2008 and 2009, one on each hand/wrist.  (TR 23.)  He further noted that Plaintiff "has residual weakness with her grip bilaterally," and that Dr. Geoghegan "found she had 50% grip strength."  (TR 24.)  The ALJ wrote that the "residual functional capacity accommodates the claimant's

weakened grip by liming the claimant to frequent handling bilaterally." (*Id.*) Plaintiff points out that, under the applicable regulations, "frequent" constitutes anywhere from one to two thirds of a workday. SSR 83-10, 1983 WL 31251. She argues that "[n]owhere in Dr. Geoghegan's report does he suggest that she has this much command of her hands." (Docket no. 21 at 19.) The undersigned finds the ALJ's interpretation of Dr. Geoghegan's report reasonable, and that "frequent" handling is sufficient to accommodate Plaintiff's hand issues. In addition to commenting on Plaintiff's grip strength, Dr. Geoghegan notes that Plaintiff "is able to pick up a coin, fasten a button, and open a door with either hand," and she had a normal range of motion in her wrists, hands, and fingers. (TR 500–01.) Dr. Geoghegan's findings do not evidence any greater limitations, and Plaintiff points to no other proof in the record (other than Plaintiff's own testimony, which the ALJ properly discounted) which would support her assertion that she requires less than frequent handling.

Next, Plaintiff argues that the ALJ improperly evaluated her Hashimoto's (thyroid) disease. She argues that while the ALJ comments on the fact that Plaintiff's treatment is limited to Vitamin B12 shots and Synthroid, the ALJ "does not explain what course of treatment other than medications would be appropriate." (Docket no. 21 at 19.) Plaintiff fails to acknowledge the remaining portions of the ALJ's analysis regarding Plaintiff's thyroid condition. The ALJ notes that Plaintiff sought work clearance while she was experiencing symptoms caused by her thyroid disorder, and further emphasizes the results of an August 2014 test which showed that while Plaintiff was "clinically hypothyroid," she was nevertheless within a normal range. (TR 24, 511.)

Plaintiff's remaining arguments regarding the ALJ's formulation of Plaintiff's RFC concern the ALJ's decision to assign less weight to the opinion of Dr. Geoghegan, the

13

independent consultative examiner, than to the opinion of Dr. R.H. Digby, M.D., the state agency physician who did not examine Plaintiff but who reviewed her medical records. The undersigned finds no error here.

Pursuant to 20 C.F.R. §§ 404.1527(d) and 416.927, an ALJ is to "evaluate every medical opinion" submitted in light of a variety of listed factors, which include the nature of the relationship, the supporting medical basis for the opinion, and overall consistency with the larger record. The regulation also sets out a presumptive sliding scale of deference to be given to various types of opinions. An opinion from a treating physician is "accorded the most deference by the SSA" because of the "ongoing treatment relationship" between the patient and the opinion physician. *Smith v. Comm'r*, 482 F.3d 873, 875 (6th Cir. 2007) (internal quotation marks omitted). A nontreating source, like Dr. Geoghegan, who physically examines the patient "but does not have, or did not have an ongoing treatment relationship with" the patient, falls next along the continuum. *Id.* A nonexamining source, like Dr. Digby, who provides an opinion based solely on review of the patient's existing medical records, is ordinarily afforded the least deference. *Id.*

Plaintiff believes the ALJ should have credited Dr. Geoghegan's opinion that Plaintiff could not lift more than ten pounds and that Plaintiff needed to alternate between sitting and standing every thirty minutes. Unlike Dr. Geoghegan, Dr. Digby found that Plaintiff had the ability to lift up to 20 pounds, but only occasionally, and that she could stand up to up to six hours in a normal eight-hour workday (with "normal breaks"). (TR 77.) Dr. Digby also did not find that Plaintiff needs to alternate between sitting and standing every thirty minutes. The ALJ assigned "great weight" to Dr. Digby's opinion that Plaintiff was capable of light work, finding "it is consistent with the record as a whole." (TR 22.) As for Dr. Geoghegan, the ALJ found that

14

the limitations he imposed were neither consistent with Dr. Geoghegan's own findings or with the other medical evidence of record.[2]  The ALJ specifically noted that none of Plaintiff's treating physicians have ever opined that she was unable to occasionally lift up to 20 pounds or that she could not stand or sit for longer than 30 minutes at a time.  (TR 24.)  Moreover, even Dr. Geoghegan noted that Plaintiff reported to him that she could stand or walk up to 60 minutes. (TR 497.)  He also noted that her gait was normal, she did not use "an assistive device for ambulation," and all of her range of motion tests had normal results.  (TR 497–502.)  She had only "mild difficulty" with getting on and off the exam table, performing heel to toe walking, squatting, and hopping.  (TR 501.)

The undersigned reviewed all the pages Plaintiff cites to support her argument that "there is quite an abundance of evidence" to support the limitations imposed by Dr. Geoghegan; although these records certainly document Plaintiff's history of medical issues, none specifically refute the ALJ's findings that she is capable of light work with the handling and postural limitations listed.  The ALJ did not err in finding that some of Dr. Geoghegan's opinions (those regarding her ability to lift up to 20 pounds occasionally and her ability to sit or stand for longer than thirty minutes at a time) were not consistent with the record as a whole, and therefore that Dr. Digby's opinions should be afforded more weight.  He explained the weight given to each opinion and why, and therefore "engaged in the proper analysis and reached a conclusion that is supported by substantial evidence." *Rowland v. Colvin*, No. 15-50-DLB, 2016 WL 1305896, at *5 (E.D. Ky. Apr. 1, 2016).

---

[2] As Plaintiff points out, the ALJ also erroneously believed that Plaintiff worked in a medium exertional level job after her carpal tunnel surgeries in 2008 and 2009.  (Docket no. 21 at 20.)  The undersigned finds this error is not fatal to the ALJ's RFC analysis, as the ALJ articulated other specific reasons for discounting Dr. Geoghegan's opinion and crediting Dr. Digby's.

Regarding Dr. Digby's opinion, Plaintiff also argues that he did not consider her carpal tunnel issues or the fact that she has Hashimoto's disease, and because he "actually states that he affords Dr. Geoghegan 'great weight' in the assessment," but then arrives at a different RFC from Dr. Geoghegan. (Docket no. 21 at 21.) Plaintiff cites pages 55-58 of the Transcript, an excerpt from Plaintiff's Disability Determination Explanation. (*Id.*) This document is signed by Dr. Digby as well as Blaine Pinaire, Ph.D. (TR 58, 62.) Plaintiff's thyroid problems are referenced several times, as are issues with her wrists. Dr. Digby does state that he affords Dr. Geoghegan's opinion "great weight," but this statement clearly does not indicate that Dr. Digby intended to adopt it wholesale. Dr. Digby notes specifically that Dr. Geoghegan only "provided a one time, consultative examination." (TR 59.) Nevertheless, as discussed above, their opinions are not strikingly different. The only differences are that Dr. Digby found Plaintiff was capable of *occasionally* lifting up to 20 pounds, and that Plaintiff did not require a sit/stand option every thirty minutes, although Dr. Digby did opine that Plaintiff could not be required to stand more than six hours in an eight hour work day; nor could she be required to sit more than six hours in an eight hour work day, opinions which the ALJ adopted by limiting Plaintiff to light work. *See* SSR 83-10, 1983 WL 31251, at *6 ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours out of an 8-hour workday. Sitting may occur intermittently during the remaining time."). Clearly, Dr. Digby agreed that Plaintiff required breaks, just not as frequently as once every thirty minutes.

The undersigned finds there is substantial evidence supporting the ALJ's assessment of Plaintiff's RFC. Plaintiff's Motion should be denied in this regard.

## VI.   CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 21) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 25) be **GRANTED**.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: April 6, 2017		s/ Mona K. Majzoub
		MONA K. MAJZOUB
		UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: April 6, 2017                  s/ Lisa C. Bartlett
                                           Case Manager